UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MATTHEWS,

    Plaintiff,

v.

S&L GROUP, LLC,
SADREDA LATEIS EGLESTON, also known as
SADREDA LATEIS CROMARTIE, and
JOHNATHAN JAEL CROMARTIE,

    Defendants.

_____/

<u>COMPLAINT</u>

**I. Introduction**

1. Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other adverse consequences, and extort the payment of money from plaintiff.

2. Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*

3. Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers

1

pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts.

Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

   4.  These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

   5.  On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

   6.  On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

   7.  Additionally, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one

count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S.

District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed

November 2, 2016, in which the government alleges that the defendants cheated thousands of

consumers out of millions of dollars by running the same type of scam that is described in this

complaint.

8.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a

felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification

of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful

activity that constitutes a violation of Federal law . . . ." The act defines a "means of

identification" to include an individual's "name, social security number, date of birth," and other

information. It is an express violation of the FDCPA to commit a crime in connection with the

collection of any debt.

## II.    Jurisdiction

9.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.   Parties

10.     Plaintiff Jason Matthews is an adult, natural person. Mr. Matthews is a

"consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Matthews is a

"person" as the term is defined and used in the DPPA.

11.     Defendant S&L Group, LLC ("S&LG") is a North Carolina limited liability company, formed on or about October 17, 2014, doing business from leased office space on the second floor of a strip mall, at 5820 E. WT Harris Boulevard, Suite 103, Charlotte, North Carolina 28215. The S&LG annual report filed June 9, 2015 states that S&LG, telephone number 704-572-6350, is in the business of "Collections," and that the member and registered agent of S&LG is defendant Sadreda Lateis Egleston. S&LG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. S&LG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. S&LG is a "debt collector" as the term is defined and used in the FDCPA.

12.     S&LG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

13.     S&LG is sometimes referred to as the "Corporate Defendant" in this complaint.

14.     Defendant Sadreda Lateis Egleston, also known as Sadreda Lateis Cromartie, is a natural person, age 40, purportedly residing at 4525 Poplar Grove Drive, Charlotte, North Carolina 28269. Ms. Egleston previously resided at 1819 Sam Wilson Road, Charlotte, North Carolina 28214. Upon information and belief, Ms. Egleston is the wife of defendant Johnathan Jael Cromartie. Ms. Egleston uses multiple telephone numbers to conduct defendants' credit identity theft and debt collection scam, including: 704-249-1132, 704-572-6350 and 919-230-9970. Ms. Egleston uses multiple email addresses to conduct defendants' credit identity theft and debt collection scam, including: slgroup978@gmail.com and sadreda30@gmail.com. Ms. Egleston is an owner, officer, director, manager, employee and agent of the Corporate Defendant. Ms. Egleston uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Egleston regularly collects or attempts to collect, directly or

4

indirectly, debts owed or due or asserted to be owed or due another. Ms. Egleston is a "debt collector" as the term is defined and used in the FDCPA.

15.     On May 23, 2019, defendant Sadreda Lateis Egleston, 1216 Lakedell Drive, Charlotte, North Carolina 28215, in her capacity as "Owner," filed with the Register of Deeds for Mecklenburg County, North Carolina (Instrument # 2019062632; BK: 33530 PG: 128) an Assumed Business Name Certificate, for Sadreda Lateis Egleston to operate a "Credit Repair" business using the assumed named "S & L Financial."

16.     Ms. Egleston (a) created the collection policies and procedures used by the Corporate Defendant and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendant, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendant and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

17.     Ms. Egleston directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

18.     Defendant Johnathan Jael Cromartie is a natural person, purportedly residing at

5

4525 Poplar Grove Drive, Charlotte, North Carolina 28269. Mr. Cromartie previously resided at 1819 Sam Wilson Road, Charlotte, North Carolina 28214. Upon information and belief, Mr. Cromartie is the husband of wife of defendant Sadreda Lateis Egleston. Mr. Cromartie is an owner, officer, director, manager, employee and agent of the Corporate Defendant. Mr. Cromartie uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cromartie regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cromartie is a "debt collector" as the term is defined and used in the FDCPA.

19.    Mr. Cromartie (a) created the collection policies and procedures used by the Corporate Defendant and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendant, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendant and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

20.    Mr. Cromartie directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

6

21.     On September 20, 2020, defendants anonymously registered through Google LLC, the internet domain www.belgateassociates.com. Defendants and their employees and agents, use the domain to communicate by email with multiple addresses, including verification@belgateassociates.com.

22.     Defendants use multiple unregistered, fictitious names to conceal their identities and locations while conducting defendants' credit identity theft and debt collection scam, including: Belgate & Associates; Belgate Associates; Processing Department; S & L Group; National Information Center; IC System; Carmen Stokes; and Cindy Wilson.

23.     Defendants own, control and use a Merchant Account established in the name of "S & L Financial," telephone number 919-230-9970, located in North Carolina, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

24.     Defendants and their its employees and agents use multiple telephone numbers when conducting their credit identity theft and debt collection scam, currently including: 215-918-4022; 302-281-0495; 305-574-9580; 330-295-3107; 367-282-0302; 470-319-4110; 502-444-2963; 507-867-9024; 704-244-1032; 704-572-6350; 704-781-7586; 734-315-4789; 801-487-8087; 802-487-8087; 804-258-9404; 813-331-8994; 855-480-6392; 904-474-0955; 919-230-9970; and 920-234-0470.

25.    Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

26.    All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

27.    Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic

services, and commingling revenue, expenses and payroll.

28.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

29.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

IV.   **Facts**

30.     In or about September of 2008, plaintiff Jason Matthews obtained and used a line

of credit to purchase goods and services for personal, family and household purposes. In connection with that account, Mr. Matthews's private, personal and financial information, including Mr. Matthews's Social Security Number, date of birth, residential address, telephone numbers, and banking information, was compromised, stolen and unlawfully used to create a counterfeit account and a related, counterfeit, allegedly unpaid debt.

31.    The perpetrators included Mr. Matthews's counterfeit account in multiple portfolios containing thousands of other counterfeit credit card accounts, and then sold the portfolios to, or otherwise placed the accounts with, multiple criminal enterprises across the country, to be used to contact and threaten consumers with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from the identity theft victims.

32.    In or about January 2020, an entity named Liberty Solutions & Associates, LLC ("LSA"), and others, somehow acquired a portfolio of counterfeit accounts that included Mr. Matthews's counterfeit account, along with Mr. Matthews's stolen personal and financial information.

33.    In January 2020, LSA's employees and agents contacted Mr. Matthews by telephone, falsely stated that Mr. Matthews owed money in connection with a counterfeit account, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money from Mr. Matthews.

34.    In February 2020, Mr. Matthews hired an attorney to file a lawsuit against LSA and others, for violating the FDCPA, DPPA and other laws.

35.    In February 2020, Mr. Matthews entered into a pre-suit settlement agreement with LSA and others.

36.    On July 13, 2020, the Federal Trade Commission filed a lawsuit against LSA and others for running a credit identity theft and debt collection scam. *FTC v. National Landmark Logistics LLC et al.,* U.S. District Court, District of South Carolina (Rock Hill), Case No. 0:20-cv-02592-JMC.

37.    Despite the foregoing, Mr. Matthews personal and financial information was obtained by another credit identity theft and debt collection scam operation, as described below.

38.    In March 2020, employees and agents of an entity named Zenco Collections LLC and others, communicated with Mr. Matthews, falsely stated that Mr. Matthews owed money in connection with a counterfeit account, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money from Mr. Matthews.

39.    On May 5, 2020, Mr. Matthews, through his attorney, filed a lawsuit against Zenco Collections LLC and others, alleging violations of the FDCPA, DPPA and other laws. *Jason Matthews v. Zenco Collections LLC et al.,* U.S. District Court, Western District of Michigan, Case No. 1:20-cv-390.

40.    In October 2020, Mr. Matthews entered into a settlement agreement with Zenco Collections LLC and others, and the lawsuit was dismissed.

41.    Despite the foregoing, Mr. Matthews personal and financial information was obtained by another credit identity theft and debt collection scam operation, as described below.

42.    In July 2020, employees and agents of an entity named ADR Billing LLC and others, communicated with Mr. Matthews, falsely stated that Mr. Matthews owed money in connection with a counterfeit account, and falsely threatened Mr. Matthews with litigation,

prosecution and other adverse consequences, in efforts to coerce the payment of money from Mr.
Matthews.

43.    On August 5, 2020, Mr. Matthews, through his attorney, filed a lawsuit against
ADR Billing LLC and others, alleging violations of the FDCPA, DPPA and other laws. *Jason
Matthews v. ADR Billing LLC et al.,* U.S. District Court, Western District of Michigan, Case No.
1:20-cv-733.

44.    In November 2020, Mr. Matthews entered into a settlement agreement with ADR
Billing LLC and others, and the lawsuit was dismissed.

45.    Despite the foregoing, and as described below, the defendants named in this
complaint are the most recent group of credit identity thieves and debt collection scam operators
to obtain and use Mr. Matthews's stolen personal and financial information to contact and falsely
threaten Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to
coerce the payment of money from Mr. Matthews to supposedly satisfy a counterfeit account and
non-existent debt.

46.    On or about December 7, 2021, defendants placed a call from telephone number
813-331-8994 to Mr. Matthews's cellular telephone and left the following message on Mr.
Matthews's voice mail: "Hello. This message is intended for Jason Matthews. I'm contacting you
in regards to a formal complaint that's in the process of being filed for several different matters. I
am calling to verify that we do have the correct address for this individual. The next step will be
filing necessary paperwork in your county. At this time you do have the right to contact the
information center. If you wish to exercise that right, the number is 470-319-4110, and you will
need the Reference Claim Number, CNY328309."

47.    On or about December 7, 2021, defendants placed another call from telephone number 813-331-8994 to Mr. Matthews's cellular telephone and left the following message on Mr. Matthews's voice mail: "This imperative message is for Jason Matthews. I'm contacting you from the Processing Department. I received an order for you pertaining to two pending matters. Unfortunately, because I am unable to reach you by phone, I may be actively pursuing you at your place of employment and your residence. Jason Matthews, you have the right to contact the client to resolve your case file voluntarily, but do understand, when you are located, you forfeit that right. Your Case Number is CNY328309, and you can reach their office at 470-319-4110. Jason Matthews, you have been notified."

48.    On December 8, 2021, a return call was made to defendants at telephone number 470-319-4110. The call was answered by defendants' employee and agent who identified herself as "Carmen Stokes" with the "Processing Department" at "IC System," direct telephone number 502-444-2963, extension 6804, and who made the following representations:

a)    Mr. Matthews has "an actual complaint here in our office to be processed and filed for court procedure."

b)    Mr. Matthews's "Case Number" is "CNY328309."

c)    Mr. Matthews was "scheduled to be served between nine and seventy-two hours to appear in court, you have an actual complaint here with your name and Social Security Number attached."

d)    There was a "lien and wage garnishment attached to [Mr. Matthews's Social Security Number."

e)    Defendants were contacting Mr. Matthews to determine whether Mr.

13

Matthews wanted to "rectify or dispute in court" a delinquent credit card debt in the amount of $2,327.00.

f)      CitiFinancial had retained defendants collect the debt from Mr. Matthews. CitiFinancial was defendants' "client."

g)      Defendants are "mediators."

h)      If Mr. Matthews agreed to pay money to defendants, then defendants would "dismiss the case" and Mr. Matthews could avoid paying court costs, attorney fees, and fines.

i)      If Mr. Matthews did not agree to pay money to defendants, then Mr. Matthews also would be required to pay $7,000.00 in "restitution."

j)      Defendants would agree to settle the debt for an immediate payment of $1,000.00, and "dismiss the pending allegations" against Mr. Matthews.

k)      Defendants are a "litigation office."

l)      If Mr. Matthews agreed to pay money to defendants, then defendants would take Mr. Matthews "out of litigation" and Mr. Matthews "would not be served."

m)      Mr. Matthews's payment would be processed by Belgate & Associates and S & L Financial.

n)      Once Mr. Matthews paid money to defendants, Mr. Matthews would be "pulled out of litigation."

49.      On December 8, 2021, in response to defendants' false threats of litigation, prosecution and other adverse consequences, Mr. Matthews authorized a debit card payment to

14

defendants in the amount of $100.00. The payment was facilitated by defendants' employee and agent who identified herself as "Cindy Wilson," and stated that she was with the "Processing Department" of "Belgate & Associates," located in Charlotte, North Carolina.

50.     On December 8, 2021, defendants caused Mr. Matthews's debit card payment of $100.00 to be transferred to defendants' Merchant Account established in the name "S & L Financial," telephone number 919-230-9970, located in Charlotte, North Carolina. According to the debit card's issuing bank, the payment posted to defendants' Merchant Account on December 9, 2021.

51.     On December 9, 2021, defendants sent an email through DocuSign to Mr. Matthews. The email purported to be from "Belgate & Associates" and provided a contact email address of verification@belgateassociates.com. The email linked to a proposed letter agreement dated December 8, 2021 on the letterhead of "Belgate & Associates," with no listed business address, and a contact telephone number 855-480-6392. The letter agreement stated that "Payments will be posted through S & L Financial." The email also linked to a document captioned "Authorization For Payment Form." Mr. Matthews refused to sign either document. The email also linked to a DocuSign document captioned "Certificate Of Completion" that identified the sender of the email as Belgate Associates, 1819 Sam Wilson Road, Charlotte, North Carolina 28214, which is a prior residential address for defendant Sadreda Lateis Egleston. The email also linked to a DocuSign document captioned "Consumer Disclosure," that identified "S & L Group" as the sender of the email. A copy of the email and documents are attached to this complaint as Exhibit A.

52.     The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are counterfeit, time-barred, or not owed, and through the use of unlawfully obtained account and personal information.

53.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

54.     Defendants and their employees and agents falsely represented that Mr. Matthews owed money in connection with a counterfeit account.

55.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Matthews's alleged debt.

56.     Defendants and their employees and agents falsely represented that Mr. Matthews owed a debt that is not owed.

57.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

58.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Matthews's personal and financial information, in an effort to coerce the payment of money from Mr. Matthews.

59.     Defendants and their employees and agents falsely represented that they are a mediation firm.

60.     Defendants and their employees and agents falsely represented that they are

attorneys and a law firm.

61.     Defendants and their employees and agents falsely represented that they have a

Legal Department.

62.     Defendants and their employees and agents falsely represented and falsely implied

that lawyers were involved in the efforts to collect the alleged debt.

63.     Defendants and their employees and agents falsely represented and falsely implied

that lawyers would become involved in the efforts to collect the alleged debt.

64.     Defendants and their employees and agents falsely represented and falsely implied

that a lawsuit was going to be filed against Mr. Matthews to collect the alleged debt.

65.     Defendants and their employees and agents falsely represented and falsely implied

that a lawsuit already had been filed against Mr. Matthews to collect the alleged debt.

66.     Defendants and their employees and agents falsely represented and falsely implied

that defendants represent CitiFinancial.

67.     Defendants and their employees and agents falsely represented and falsely implied

that a lawsuit had been filed by CitiFinancial against Mr. Matthews.

68.     Defendants and their employees and agents falsely represented that a process

server was being dispatched in a matter hours to Mr. Matthews's residence and place of

employment to serve Mr. Matthews with a summons and complaint that had been filed against

Mr. Matthews in efforts to collect the alleged debt.

69.     Defendants and their employees and agents falsely represented that Mr. Matthews

had committed fraud.

70.     Defendants and their employees and agents falsely represented that Mr. Matthews

had defrauded a lending or financial institution.

71.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews had committed a crime.

72.    Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Matthews.

73.    Defendants and their employees and agents falsely represented that Mr. Matthews owed a debt that included court costs, filing fees and attorney fees.

74.    Defendants and their employees and agents falsely represented that Mr. Matthews's wages would garnished.

75.    Defendants and their employees and agents falsely represented that liens would be placed against Mr. Matthews's assets.

76.    Defendants did not intend to file a lawsuit against Mr. Matthews in any court in efforts to collect the alleged debt.

77.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

78.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

79.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

80.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15

U.S.C. § 1692e(1).

81.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

82.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

83.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

84.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

85.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

86.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

87.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. §

1692e(8).

88.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

89.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

90.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

91.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

92.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

93.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

94.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

95.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

96.    Defendants and their employees and agents failed to timely send to Mr. Matthews a notice containing the information required by 15 U.S.C. § 1692g(a).

97.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

98.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

99.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

100.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

101.    In connection with efforts to collect an alleged debt from Mr. Matthews, defendants obtained and used personal information regarding Mr. Matthews from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data,

LLC.

102.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

103.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

104.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

105.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

106.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a
> motor vehicle record, for a purpose not permitted under this chapter, shall be
> liable to the individual to whom the information pertains, who may bring a civil
> action in a United States district court.

18 U.S.C. § 2724(a).

107.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

108.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Matthews.

109.    Defendants used the database to obtain, disclose and use personal information

regarding Mr. Matthews.

110.    Defendants made a false representation to the provider of the database to obtain

personal information regarding Mr. Matthews that was derived from Mr. Matthews's motor

vehicle record.

111.    Alternatively, the entity that obtained Mr. Matthews's personal information from

the database and disclosed the personal information to defendants, made a false representation to

the provider of the database to obtain personal information regarding Mr. Matthews that was

derived from Mr. Matthews's motor vehicle record.

112.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

113.    Defendants knowingly obtained, disclosed and used Mr. Matthews's personal

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with

willful or reckless disregard for the law.

114.    No defendant had a "permissible use" as the phrase is defined in the DPPA to

obtain, use or disclose Mr. Matthews's personal information obtained from the database.

23

115.    No defendant had Mr. Matthews's consent, permission, authorization or waiver to obtain Mr. Matthews's personal information from the database.

116.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

117.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

118.    Defendants intentionally and wilfully violated the DPPA.

119.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

120.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

121.    Plaintiff incorporates the foregoing paragraphs by reference.

122.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)  Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)  Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)  Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)  Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)  Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)  Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

123.  Plaintiff incorporates the foregoing paragraphs by reference.

124.  Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)  Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)  Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)  Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)  An injunction prohibiting defendants from further obtaining or using plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: January 19, 2022                         /s/ Phillip C. Rogers
                                                Phillip C. Rogers (P34356)
                                                Attorney for Plaintiff
                                                Centennial Plaza, Ste. 205
                                                2851 Charlevoix Dr. SE
                                                Grand Rapids, MI 49546-7090
                                                (616) 776-1176
                                                ConsumerLawyer@aol.com